IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**KELYNN LEWIS**,

Plaintiff,

v.

**THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS; ADAM'S COUNTY SHERIFF'S OFFICE; SHERIFF GENE CLAPS,** *in his official capacity*; **DEPUTY S. WOODHOUSE,** *in his official capacity*; **DEPUTY [JOHN DOE] RAMIREZ,** *in his official capacity*; **DEPUTY [JOHN DOE] ARAGON** *in his official capacity*; **DEPUTY [JOHN DOE] NOVACHEK,** *in his official capacity*; **DEPUTY [JOHN DOE] MILLER,** *in his official capacity*; **JOHN DOES 1-5,** *in their official capacities*; **and JOHN DOE ENTITY**

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Kelynn Lewis, by and through his attorney, Kevin Flesch of Flesch Law, brings this Complaint against The Board of County Commissioners of the County of Adams, Adam's County Sheriff's Office; Sheriff Gene Claps, Deputy S. Woodhouse, Deputy [John Doe] Ramirez, Deputy [John Doe] Aragon, Deputy [John Doe] Novachek, Deputy [John Doe] Miiller, John Does 1-5, and John Doe Entity for damages and in support states as follows:

1

## I. NATURE OF THE ACTION

1. This action arises under the United States Constitution, the laws of the United States and the laws of State of Colorado is brought pursuant to 14th Amendment of the United States Constitution, 42 U.S.C. § 1983, premises liability, and tort.

## II. JURISDICTION AND VENUE

2. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 1343(a)(3). Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All events alleged herein occurred within the State of Colorado or were directed at individuals within the State of Colorado.

## III. PARTIES

3. Plaintiff, Kelynn Lewis, is a natural person and resides in the State of Colorado. Plaintiff is currently incarcerated awaiting trial in the State of Colorado at the Adams County Detention Facility which is located at 150 N 19th Ave, Brighton, CO 80601.

4. Defendant, The Board of County Commissioners of the County of Adams and the Adam's County Sheriff's Department, were at all times relevant to this Complaint, an Adams County governmental agency, located at 4430 S. Adams County Parkway, Brighton, CO 80601.

5. Defendants, Sheriff Gene Claps, Deputy S. Woodhouse, Deputy [John Doe] Ramirez, Deputy [John Doe] Aragon, Deputy [John Doe] Novachek, Deputy [John Doe] Miiller,

and John Does 1-5 are all natural persons and employed or the agents of the Adams County Sheriff's Office. Service may be had on them at 4430 S. Adams County Parkway, Suite W5400, Brighton, CO 80601 or the office of the Adams County Attorney located at 4430 S. Adams County Pkwy., Brighton, CO 80601.

6. Defendant sheriff officers were at all times relevant to this complaint, duly appointed and sworn as peace officers for the Adam's County Sheriff's Office.

7. John Does 1 - 5 are currently unknown/unidentified Adams County Sheriff's Office deputies and/or Sheriff s Office personnel who were assigned to the Adams County Detention Facility on the operative dates specified in this Complaint.

8. John Doe Entity is a third party, private company and its agents who were involved in the maintenance and repair of mechanical/electrical jail doors inside the Adams County Sheriff's Office Detention Facility. They were responsible for the proper maintenance, repair, and operation of the Adams County Jail's physical site on the operative dates specified in this Complaint.

## IV. STATEMENT OF FACTUAL ALLEGATIONS

9. The Adams County Detention Facility ("ACDF") is located at 150 North 19th Street, Brighton, CO, 80601. The function of the facility is to both house individuals awaiting criminal trial and house inmates serving brief detention sentences.

10. On or about February 28, 2024, the ACDF was overseen by the Adams County Sheriff, Defendant Claps and the Adams County Board of County Commissioners.

11. To ensure the functions and operation of the ACDF, Defendant Claps hires, trains and oversees deputies of the Adams County Sheriff's Office ("ACSO"). These deputies include Defendants Woodhouse, Ramirez and Aragon, who were employed by Defendant ACSO at the operative times listed in this Complaint.

12. On or about February 28, 2024, three of the deputies responsible for working in the ACDF were Defendants Woodhouse, Ramirez and Aragon.

13. The ACDF is a county-run entity, all lawsuits against Adams County must be brought against the Adams County Board of County Commissioners, which is the governing body for Adams County, Colorado pursuant to C.R.S. § 30-11-105.

14. The Adams County Board of County Commissioners has oversight and monitoring responsibilities of its employees and contracted agents at the ACDF.

15. The mechanics and electronics of cell doors at ACDF were maintained and monitored by unknown John Doe 1-5 at the ACDF on or around February 28, 2024.

16. The mechanics, maintenance, repair, and diagnostics of cell doors at ACDF were maintained and monitored by an unknown John Doe Entity hired by Defendants ACSO and Defendant Claps on or around February 28, 2024.

17. On or around February 28, 2024, Plaintiff was an inmate at the jail operated by Defendants ACSO and Claps. Plaintiff was housed in Pod 2, Cell B-231.

18. At or around 7:35 AM, the door to Cell B-231 was opened. Plaintiff was directed by Defendant Ramirez to exit the cell so that deputies could perform a cell inspection.

Defendant Ramirez was accompanied by Defendant Aragon. Plaintiff complied with the request.

19. The door to Cell B-231 was operated by Defendant Woodhouse.

20. As Plaintiff exited Cell B-231, the door (being operated by Defendant Woodhouse) suddenly and violently closed. There was no audible warning whatsoever that the door was closing.

21. Defendant Ramirez and Aragon did not warn the Plaintiff of the closing door.

22. The door closed on the Plaintiff's third digit of his left hand, crushing the finger.

23. Defendant suffered extreme pain, discomfort, and permanent disfigurement from this injury.

24. This injury was witnessed by Defendants Ramirez and Aragon.

25. Defendant Ramirez requested Defendant Woodhouse to reopen the door to Cell B-231, which he did.

26. Defendant Ramirez inspected Plaintiff's injured finger. Plaintiff was then escorted to the medical unit for further treatment.

27. After the incident, Defendant Novachek belittled the Plaintiff by taking pictures of his partially amputated finger and sharing the photo with other deputies working at the ACDF.

28. Defendant officers began calling the Plaintiff "nubs" and belittling him about the injury.

29. Officer Miller took the "tip" of the partially severed finger, placed it into a coffee cup, and began showing other deputies in the day or days after the incident.

30. Plaintiff was eventually transported to Platte Valley Medical Center for further treatment.

31. He was diagnosed with a partially amputated third digit on his left hand.

32. After medical treatment, the Plaintiff was diagnosed by a physician and mandated that he would need additional medical care to remove the stitches from his finger after 14 days.

33. This treatment need was so obvious that even a lay person would easily recognize the necessity for medical attention.

34. ACDF failed to provide that diagnosed treatment to the Plaintiff. They did not remove the stitches until approximately 45 days after the incident.

35. Due to this delay, Plaintiff suffered additional pain and lasting injuries to his finger.

36. The Plaintiff's left hand involuntarily shakes and locks up, has severe pain with the change of the weather, and Plaintiff has lost all strength in his left hand.

37. Plaintiff suffered and will continue to suffer pain, permanent disfigurement and impaired function resulting from the serious injury he suffered on February 28, 2024, and the grossly inadequate medical treatment he received.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*42 U.S.C. § 1983 – Fourteenth Amendment Violation*
(Defendant Claps, Defendant Woodhouse, Defendant Ramirez, Defendant Aragon, and Defendant John Does 1-5)

38. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

39. Correctional facilities must house inmates in a safe and effective manner.

40. Plaintiff had a substantive due process right under the Fourteenth Amendment, "a liberty interest to be free from unreasonable risk of harm," and to be free from unjustified intrusion on his respective personal security, in the form of physical harm, while in county custody.

41. Plaintiff had a constitutional right to be placed by his county custodians in a safe, non-violent environment. He had a cognizable liberty interest in reasonably safe living conditions.

42. Jail inmates have a constitutional and statutory right to safe and effective facilities while in government custody.

43. Because Plaintiff was in-custody, Plaintiff had a special relationship with the Defendants.

44. Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 knowingly placed Plaintiff in a dangerous situation when they placed him in Pod 2, Cell B-231 because they knew that this door did not function properly.

45. Defendants created a substantial, immediate, obvious, and known danger to the Plaintiff.

46. Defendants knew that the Plaintiff faced a substantial risk of harm and disregarded that risk, by operating a faulty door or closing a door when an inmate was in its path of operation.

47. Defendants failed to provide any warning whatsoever to the Plaintiff when operating the cell door.

7

48. Defendants failed to take reasonable measures to abate the risk to the Plaintiff by ensuring he was not being subjected to an improperly operating door.

49. The improperly working door created an extremely dangerous condition at the ACDF.

50. As a result of both this special relationship and this creation of danger, Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 each had a special duty to protect Plaintiff from harm.

51. Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 failed to exercise acceptable professional judgment and instead departed extremely from the exercise of acceptable professional judgment by:

    a. failing to properly maintain the cell door to Pod 2, Cell B-231;

    b. failing to properly monitor the cell door to Pod 2, Cell B-231;

    c. failing to properly operate the cell door to Pod 2, Cell B-231;

    d. failing to properly supervise staff involved in the maintenance, monitoring and/or operation of the cell door to Pod 2, Cell B-231.

    e. failing to properly warn the Plaintiff of the dangerous door.

52. Defendant Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 conduct described above demonstrates that Defendants were grossly negligent, consciously disregarded known risks, abdicated their duty to act professionally to Plaintiff's health and safety, and were willfully, wantonly, and deliberately indifferent to the serious and immediate risks of harm to Plaintiff.

53. Likewise, Defendant Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 conduct described above is an abuse of their power as government officials.

54. Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 knew or should have known that these acts and failures to act would cause the violation of constitutional rights that were clearly established at all relevant times.

55. As a result of the failures of Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5, Plaintiff was subjected to harm in the detention facility run by the Adams County Board of County Commissioners and Sherrif Claps.

56. Acting under the color of state law, with gross negligence, deliberate indifference, lack of professional judgment and reckless disregard for Plaintiff's safety and rights, Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5, through their actions or inactions, deprived Plaintiff of his liberty, privacy, and right to be free from unjustified intrusions into his respective personal security, in violation of the Fourteenth Amendment to the United States Constitution.

57. Defendants Claps, Woodhouse, Ramirez, Aragon and John Does 1-5 proximately caused the deprivation of Plaintiff's liberty interest in his own personal safety.

58. Plaintiff has suffered pain and suffering, physical injuries, and severe mental anguish related to the incident.

59. After the incident, Defendant Novachek belittled the Plaintiff by taking pictures of his partially amputated finger and sharing the photo with other deputies working at the ACDF.

60. Defendant officers began calling the Plaintiff "nubs" and belittling him about the injury.

61. Officer Miller took the "tip" of the partially severed finger, placed it into a coffee cup, and began showing other deputies in the day or days after the incident.

62. These actions furthered the Plaintiff's emotional distress and suffering.

63. As a further direct and proximate result of Defendants Claps, Woodhouse, Ramirez, Aragon, Miller, Novachek, and John Does 1-5 acts and omissions, Plaintiff incurred, and will continue to incur medical expenses, pain and suffering, permanent scarring and disfigurement, emotional distress, and other consequential damages.

64. Defendants Claps, Woodhouse, Ramirez, Aragon, Miller, Novachek, and John Does 1-5 were acting under color of state law when the aforementioned acts and omissions occurred.

65. Defendants Claps, Woodhouse, Ramirez, Aragon, Miller, Novachek, and John Does 1-5 are liable to Plaintiff or damages related to violation of Plaintiff's constitutional rights under 42 USC § 1983.

### SECOND CLAIM FOR RELIEF
*42 U.S.C. § 1983 – Deliberate Indifference to Medical Care*
(The Board of County Commissioners of the County of Adams, Adam's County Sheriff's Office, Sheriff Gene Claps, and John Does 1-5)

66. The Defendants failed to provide adequate medical care to the Plaintiff which is a violation of the Eighth Amendment when it is the result of deliberate indifference to a prisoner's serious medical needs.

67. Plaintiff was treated originally for a partially amputated third digit on his left hand.

68. After this initial medical treatment, the Plaintiff was diagnosed/instructed by a physician that he would need additional medical care to remove the stitches from his finger after 14 days.

69. This treatment need was so obvious that even a lay person would easily recognize the necessity for medical attention.

70. ACDF failed to provide that diagnosed treatment to the Plaintiff. They did not remove the stitches until approximately 45 days after the incident.

71. ACDF Defendants knew of and disregarded the excessive risk to inmate health and safety by delaying the necessary and requested medical treatment.

72. ACDF had gross deficiencies in staffing or lacked such basic procedures that would allow such a delay and lapse of medical treatment to occur. This delay effectively denied the Plaintiff access to adequate medical care.

73. Due to this delay, Plaintiff suffered additional serious pain, discomfort, emotional distress, and lasting injuries to his finger.

74. Defendants are liable to the Plaintiff for the clear violation of Plaintiff's constitutional rights.

### THIRD CLAIM FOR RELIEF
*Colorado Premises Liability*
(All Defendants)

75. Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

76. On February 28, 2024, the Defendants owned and operated the detention facility located at 150 N 19th Ave, Brighton, CO 80601which was real property within the meaning of C.R.S. § 13-21-115.

77. At all times relevant to Plaintiff's claims, the Defendants were legally responsible for the activities conducted or circumstances existing on said property and were therefore each a "landowner" as defined in C.R.S. § 13-21-115(1).

78. Plaintiff was an "invitee" under the Colorado Premises Liability Act (CPLA) statute.

79. The Defendants had a duty to exercise reasonable care to protect against dangers it actually knew about or should have known about.

80. Defendants should have known about the automated jail cell doors rapidly closing and potentially crushing fingers, limbs or other body parts of inmates.

81. Defendants should have properly trained their personnel in the operation of the automated doors.

82. Defendants Adams County, ACBOC and Claps breached their reasonable care standard when their employee or employees failed to ensure the Plaintiff had fully and completely exited the cell prior to triggering the automated door closing switch.

83. Plaintiff was damaged by the aforementioned breach of duty because his third digit on his left hand was partially amputated.

84. Defendants' breach of the reasonable care standard directly caused the harm suffered by Plaintiff.

85. Therefore, Defendants Adams County, ACBOC and Claps are liable to Plaintiff under the CPLA.

## FOURTH CLAIM FOR RELIEF
*Negligence*
(All Defendants)

86. Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

87. The Defendants individually and through respondeat superior all owed a duty of care to Plaintiff to ensure that the jail cell doors were maintained, monitored and operated in an appropriate manner as to not injure either inmates or facility staff.

88. The Defendants breached their duty owed to the Plaintiff when they failed to properly maintain, monitor, repair, and operate the door to Cell B-231.

89. Plaintiff suffered serious harm and damages by the aforementioned breaches of duty when his third digit on his left hand was partially amputated.

90. The Defendants breach of their duties directly caused the harm suffered by Plaintiff.

91. Furthermore, Defendants' conduct was both willful and wanton under C.R.S. § 24-10-118(2)(a) because they knowingly ignored a substantial risk of serious harm by operating an improperly working door, failed to warn the plaintiff of the danger, and failed to make sure the door was clear of people in its path or failed to properly repair the door.

92. The Defendant had been on notice regarding its defective doors, maintenance problems related to the doors, and the dangers that improperly working doors posed on inmates and staff at the facility.

93. After the incident, Defendant Novachek belittled the Plaintiff by taking pictures of his partially amputated finger.

94. Defendant officers began calling the Plaintiff "nubs" and belittling him about the injury.

95. Officer Miller took the "tip" of the partially severed finger, placed it into a coffee cup, and began showing other deputies in the day or days after the incident.

96. Defendants are therefore liable to Plaintiff for their negligent conduct.

### FIFTH CLAIM FOR RELIEF
*Negligent Supervision*
(The Board of County Commissioners of the County of Adams; Adam's County Sheriff's Office and Sheriff Gene Claps)

97. Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

98. Defendant Claps knew that Defendants Woodhouse, Ramirez, Aragon, and John Does 1-5, posed a risk of harm to Plaintiff by the way they maintained, monitored, and/or operated the Adams County Detention Facility automated cell doors that was not operating properly.

99. The harm that Plaintiff suffered was a foreseeable manifestation of that risk.

100. Furthermore, Defendant Claps conduct was both willful and wanton pursuant to C.R.S. § 24- 10-118(2)(a) because he knew of the harm that an improperly working cell door would pose to inmates at the facility.

101. As a direct and proximate result of Defendants' actions and inactions, including their failure to supervise and train, Plaintiff suffered the injuries described herein.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the Defendants and grant:

a. Declaratory and injunctive relief, as appropriate.

b. Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment of life, loss of liberty, privacy, sense of security and individual dignity, and other pain and suffering on all claims allowed by law in an amount to be determined at trial.

c. All economic losses and damages on all claims allowed by law to be established at trial.

d. Attorneys' fees and the costs on all claims allowed by law.

g. Pre- and post-judgment interest at the lawful rate.

h. Any further relief that this Court deems just and proper, and any other relief as allowed by law.

## VII. REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial to a jury on all issues so triable.

Respectfully submitted this 6th day of February 2026.

                **FLESCH LAW**

                */s/ Kevin C. Flesch*
                Kevin C. Flesch
                333 W. Hampden Ave., Ste. 750
                Englewood, CO 80110
                Telephone: 303-806-8886
                Facsimile: 303-806-8882
                E-mail: KevinFlesch@fleschlawfirm.com
                *Attorney for Plaintiff*